IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO CRUZ ACOSTA, | No. C -13-00989 EDL |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS** |
| v. | |
| CAROLYN W COLVIN, | |
| Defendant. | |

On March 5, 2013, Plaintiff Mario Cruz Acosta filed this lawsuit pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision denying his claims for disability insurance ("SSDI") benefits under Title II of the Social Security Act, 42 U.S.C. § 400 et seq., and supplemental security income ("SSI") benefits under Title XVI of the Act. Plaintiff subsequently moved for summary judgment, asking the Court to reverse the final decision of the Commissioner and find him disabled, or, alternatively, to remand the case for a new hearing. Defendant filed a combined opposition to Plaintiff's motion and cross-motion for summary judgment asking the Court to affirm the Commissioner's decision. Plaintiff did not file a reply.

For the reasons stated in this Order, Plaintiff's Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied. The Court remands this case for further proceedings.

**Factual Background**

    A.    <u>General Background</u>

Plaintiff's disability claim is based on his diagnosis of chronic myelogenous leukemia ("CML"). AR 210. Plaintiff was twenty-nine years old on his alleged disability onset date. AR 25. He has a high school education. AR 26. He lives with his partner for half of the week, and with his

parents for the other half of the week while his partner works. AR 70.

### B. Medical History

Plaintiff's relevant medical history began in January 2011 when he was hospitalized at San Francisco General Hospital. AR 355-357. Following a bone marrow biopsy on January 18, 2011, Plaintiff was diagnosed with CML, among other things. Id. He began a course of chemotherapy drugs, including Nilotinib. AR 346. At that time, Plaintiff's treating physician estimated his disability period to be six months. AR 684.

#### 1. *Dr. Lewis*

Plaintiff first saw Dr. Brad Lewis on January 19, 2011. AR 582, 748. On March 16, 2011, Dr. Lewis filled out a Neoplastic Disease questionnaire on Plaintiff's behalf. AR 254-55. He indicated that Plaintiff had a good response to chemotherapy, but that he had severe fatigue, ataxia and decrease of hearing following treatment. AR 254-55. Dr. Lewis also noted that Plaintiff had decreased energy level. AR 255. Dr. Lewis stated that Plaintiff needed permanent treatment and his prognosis was unknown. AR 255.

On July 13, 2011, Dr. Lewis completed another Neoplastic Disease questionnaire on Plaintiff's behalf. AR 513-14. Dr. Lewis stated that Plaintiff's CML would likely respond to chemotherapy, but was incurable. AR 513. Dr. Lewis stated that Plaintiff's CML was controlled by his current treatment. AR 514. Dr. Lewis indicated that Plaintiff suffered from weakness and edema, and that the side effects of the treatment were increased need for sleep, fatigue, and weakness. AR 514. Dr. Lewis noted that Plaintiff would need permanent treatment. AR 514.

On October 31, 2011, Plaintiff went to SFGH complaining of fatigue, headaches, diarrhea, vomiting, aches/pains, ear fullness, and ringing in ears. AR 804. Plaintiff was instructed to discontinue taking Nilotinib. AR 804. On a follow up visit with Dr. Lewis, Plaintiff stated that he felt well. AR 802. Dr. Lewis noted that Plaintiff was still fatigued after the Nilotinib and was only working four hours a day with naps, and sleeping eight hours. AR 802. Dr. Lewis instructed Plaintiff to resume taking Nilotinib. Ar 803.

In February 2012, Plaintiff was seen by Dr. Lewis and Plaintiff stated that he was feeling well, but with severe fatigue, which Plaintiff related to the fact that he had stopped drinking alcohol

four days earlier. AR 765. Treatment notes indicate that he had remained off of Nilotinib since October 2011. AR 765.

On April 16, 2012, Dr. Lewis completed a Leukemia Medical Assessment Form for Plaintiff. AR 748-50. Dr. Lewis indicated that Plaintiff suffered from CML, and that he would need permanent therapy. AR 748. Plaintiff had weight loss, weakness, chronic headaches, bone pain, and nausea/vomiting. AR 748. Dr. Lewis stated that Plaintiff occasionally experienced symptoms which interfere with the attention and concentration needed to perform simple work tasks during a typical workday. AR 748. Dr. Lewis opined that if Plaintiff were placed in a competitive job, he would not be able to perform detailed or complicated tasks, or to meet strict deadlines. AR 749. Dr. Lewis stated that Plaintiff experienced side effects from his medication, including drowsiness/sedation, fatigue, and general upset. AR 749. Dr. Lewis stated that Plaintiff's impairments were expected to last at least twelve months. AR 749. Dr. Lewis opined that Plaintiff could walk six city blocks without rest or severe pain, that he could continuously sit and/or stand for more than two hours at a time, that he would need to take three to four unscheduled thirty minute breaks to rest during an eight-hour workday. AR 750. Dr. Lewis stated that Plaintiff could frequently lift and carry up to ten pounds, and that he could occasionally lift and carry up to twenty pounds. AR 750. Dr. Lewis stated that Plaintiff would be absent from work about once or twice a month as a result of his impairments. AR 750.

          2.     *San Francisco General Hospital*

After Plaintiff's initial hospital diagnosis, he was seen at SFGH on several more occasions by various doctors, in addition to seeing Dr. Lewis there. On January 31, 2011, Plaintiff reported experiencing abdominal pain, nausea, diarrhea, headache and nosebleed. AR 349. He also had a massively enlarged spleen. AR 350. He was admitted to the hospital and stayed there for nine days. AR 349-51. During his hospital stay, he was treated with chemotherapy for his CML, and was given pain medication. AR 350. He also experienced alcohol withdrawal symptoms. AR 347. Plaintiff's doctor stated that Plaintiff's problem with "dysequilibrium" may be secondary to the cancer treatment, but could also be secondary to his "significant EtOH history" or low B12 vitamin levels. AR 354. Plaintiff was discharged on February 8, 2011 with instructions to take daily chemotherapy

3

medication. AR 350, 377-79.

On February 11, 2011, Plaintiff reported improvement in his symptoms. AR 346. Plaintiff noted persistent dizziness and balance problems when walking. AR 346. Plaintiff reported that he needed support while walking and needed to hold on to handrails and walls. AR 346. He was able to stand without difficulty, and he did not experience symptoms when sitting. AR 346. Plaintiff denied vertigo, tinnitus, hearing loss, nausea/vomiting, tremor, falls, loss of consciousness, or focal numbness/weakness. AR 346-47. He was unable to perform tandem gait, but he had a normal gait, and had no other sensory deficits. AR 347.

In April 2011, Plaintiff reported that he was taking Nilotinib and his symptoms were "much improved." AR 501. Plaintiff had dizziness upon waking but it had decreased, his hearing was improved, and he did not have bleeding or night sweats or fevers. AR 501. Plaintiff experienced an intentional weight gain with increased appetite. AR 501. Plaintiff reported drinking one glass of wine per day and using marijuana. AR 501. Plaintiff's physician found that Plaintiff's CML was in remission, and that Plaintiff was overall improved. AR 501.

In July 2011, Plaintiff reported that he was taking Nilotinib and was having some dizziness, but that his condition had improved. AR 644. Plaintiff had a diffused non-puritic rash all over his body that responded to the Nilotinib. AR 644. Plaintiff gained twenty pounds over the previous four months, and denied abdominal pain, change in bowel movement or other symptoms. AR 644. Plaintiff's doctor reported that Plaintiff was clinically doing well except for dizziness and the rash. AR 644. Plaintiff's doctor advised him to stop drinking alcohol. AR 644.

In October 2011, Plaintiff presented to the emergency department with symptoms of jaundice. AR 780.

In March 2012, Plaintiff began taking a reduced dose of Nilotinib. AR 752, 764-65. Plaintiff's doctor asked him to refrain from drinking alcohol so that the doctor could distinguish whether Plaintiff's elevated bilirubin levels were due to medication or alcohol. AR 765.

In May 2012, Plaintiff developed cellulites on his right hand due to bug bites. AR 755, 798. Right hand x-rays showed diffuse soft tissue swelling involving the dorsum of the right hand and wrist. AR 808. Plaintiff was treated with pain medication and antibiotics that reduced the pain and

4

swelling. AR 789-98; 833-37. During a follow up visit, Plaintiff stated that his hand had markedly improved, and was essentially back to baseline. AR 752.

At the end of May 2012, Plaintiff was seen again at SFGH. AR 752. He had been taking Nilotinib, but the doctor stated that it was difficult to determine whether he was having a reaction to the Nilotinib or whether alcohol was causing his symptoms. AR 752. Plaintiff stated that he had two beers the day before the follow up visit. AR 752.

### 3. *State agency consulting physician*

On April 5, 2011, State agency consultant Dr. E.L. Gilpeer reviewed the medical records in Plaintiff's file. AR 365-70. Dr. Gilpeer indicated that Plaintiff could occasionally lift and carry up to twenty pounds, could frequently lift and carry up to ten pounds, could stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, could sit with normal breaks for a total of about six hours in an eight-hour workday, and had the unlimited ability to push and/or pull. AR 366. Dr. Gilpeer stated that Plaintiff had postural limitations with which he could occasionally climb, balance stoop, kneel, crouch and crawl. AR 368. Dr. Gilpeer found that Plaintiff had no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. AR 368-69.

**Procedural History**

On February 17, 2011, Plaintiff applied for SSI and SSDI, alleging disability beginning on December 3, 2010. AR 206-07. Plaintiff's claims were denied on April 26, 2011. AR 109-113. Plaintiff's claims were denied on reconsideration on September 12, 2011. AR 120-24. On November 9, 2011, Plaintiff requested a hearing. AR 126. Administrative Law Judge John Heyer held a hearing on September 5, 2012, at which Plaintiff appeared and was represented by counsel. AR 55-74. A vocational expert testified. Id. On September 17, 2012, the ALJ issued a decision denying SSDI and SSI benefits to Plaintiff. AR 16-27. The ALJ's decision became the final decision of the Commissioner on January 8, 2013, when the Appeals Council denied Plaintiff's request for review. AR 1-3.

5

**ALJ Hearing**

    A.    <u>Plaintiff</u>

At the September 2012 hearing, Plaintiff testified that he had last worked for one year as a retail stockperson, one to two days per week, four hours per day, until February 2012. AR 58, 61. During that time, he also worked as a receptionist at a hair salon for five hours a day, one day per week, for three months. AR 58-59; 65. Prior to that, he worked as a cashier in a café for two years, as an identification checker at a bar for one and one half years, and as a file room clerk at a hospital for eight years. AR 60. He also worked as a model for about one month in 2008. AR 60.

Plaintiff stopped working in about January 2011 when his white blood cell count increased. AR 61. He was treated for CML with chemotherapy and the only medication he took was Nilotinib to control his white blood cell count. AR 64. The medication caused side effects of fatigue, constant diarrhea, bone pain, and body aches. AR 64. Plaintiff testified that in addition to his CML and the side effects of the medication, he has impaired depth perception. AR 66.

Plaintiff testified that he was capable of lifting ten pounds, standing for up to 45 minutes, walking for up to 30 minutes, and sitting for a long time, such as through a two hour movie. AR 61-62. On a typical day, he would wake up, use the bathroom, turn on the television, watch television from about 9:00 a.m. until 1:00 p.m., prepare and eat lunch, pick up around the house, watch more television, and play with the cats. AR 62. He would decide whether to take a walk with his partner in the evening. AR 62. He testified that he tries to do the dishes "here and there," but that he cannot do a full load of dishes. AR 62. He does laundry "here and there" and folds clothes, but he cannot carry the laundry down to the machine. AR 62. He helps with grocery shopping, but he cannot carry the groceries. AR 62. He can make food for himself. AR 71. He lies down for about ten hours each day. AR 68.

He likes to read, watch television, and listen to music. AR 63. He goes out to parks to lie in the sun and socialize with friends. AR 63. He goes to bars occasionally. AR 63. He drinks wine to help him "mellow out," and last used marijuana and cocaine "before everything started." AR 64-65. He does not exercise. AR 64. Before his diagnosis, Plaintiff rode his bike and skateboard. AR 70.

B. <u>Vocational Expert</u>

Vocational expert Robin Scher testified at the hearing. The ALJ asked Scher a hypothetical question based on Dr. Lewis' April 2012 evaluation of Plaintiff. AR 72. The ALJ asked whether a hypothetical person who could sit and stand for six hours in an eight hour day, walk for two hours in an eight hour day, lift twenty pounds, and was limited to simple, repetitive tasks would be able to perform any of Plaintiff's past relevant work. AR 72-73. Scher testified that such a hypothetical person could be a cashier, ticket taker or photocopying machine operator. AR 73.

Plaintiff's counsel asked Scher whether a hypothetical person as described by the ALJ, but also requiring unscheduled thirty-minute breaks every day and being absent from work for one or two days per month, as described by Dr. Lewis in his April 2012 evaluation, would be able to perform the jobs that Scher listed. AR 73-74. Scher testified that the hypothetical person would not be able to work. AR 73.

**ALJ Decision**

On September 17, 2012, the ALJ issued a written decision concluding that Plaintiff was not disabled. AR 16-27.

1. <u>Steps One and Two of the Sequential Evaluation</u>

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. AR 21. He also found that Plaintiff had not engaged in substantial gainful activity since December 3, 2010, the onset date. AR 21. Plaintiff worked after the onset date, but that work activity did not rise to the level of substantial gainful activity because it did not meet the necessary monetary threshold. AR 21.

The ALJ found that Plaintiff had a severe impairment, CML. AR 21. The medical evidence established that Plaintiff had limitations in his capacity to perform basic work activities due to his severe physical impairment. AR 21.

2. <u>Step Three of the Sequential Evaluation</u>

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. AR 22. Instead, the ALJ found that Plaintiff had the residual functional capacity to perform light work with

the following modifications: sit and stand for six hours each in an eight hour day, walk for two hours in an eight hour day and limited to repetitive tasks. AR 22. In making this finding, the ALJ considered Plaintiff's symptoms and the extent that the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence as required by the regulations. AR 22. The ALJ also considered opinion evidence. AR 22.

The ALJ stated that he followed a two step process in which it must first be determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. AR 22. If such an underlying medically determinable impairment has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning. AR 22.

Based on Plaintiff's testimony about his work history, his daily life, and the side effects of his medication to control his white blood cell count, the ALJ determined that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms. AR 23. However, the ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's residual functional capacity assessment. AR 23.

The ALJ recounted Plaintiff's medical history related to his CML diagnosis. AR 23-24. In particular, the ALJ noted that following Plaintiff's initial hospitalization in January 2011, by mid-February 2011, Plaintiff's white blood cell count was in the normal range and continued to trend downward in March 2011 through July 2011. AR 23. The ALJ noted that Plaintiff continued to do well in July 2011, and by December 2011, he was feeling well and working four hours per day. AR 24. The ALJ noted that Plaintiff's white blood cell count continued to be normal through April 2012. AR 24. After the bug bites on Plaintiff's hand, his white blood cell count was again normal in May 2012. AR 24.

Further, the ALJ discussed Dr. Lewis' evaluations of Plaintiff, noting that in March 2011, Dr. Lewis noted that Plaintiff had a good response to chemotherapy but continued to have severe fatigue, ataxia and hearing loss. AR 24. The ALJ, however, gave little weight to this opinion

because the opinion did not set forth Plaintiff's functional abilities and the record showed that Plaintiff only appeared slightly fatigued, was able to work at least four hours per day, his hearing loss had resolved and his ataxia had improved.

The ALJ noted that in July 2011, Dr. Lewis completed another evaluation of Plaintiff, stating that Plaintiff would likely respond to chemotherapy, but that his disease was incurable, and that Plaintiff had an increased need for sleep, was fatigued and had weakness. AR 24. The ALJ gave this opinion little weight for the same reasons as the March 2011 report. AR 24.

The ALJ noted that Dr. Lewis completed another evaluation in April 2012. AR 24. Dr. Lewis opined that Plaintiff was capable of light work with modifications: sitting or standing for more than two hours in an eight hour workday, having three to four unscheduled breaks lasting for one half hour each in an eight hour workday, being absent from work one or two days per month, and not performing detailed or complex work or adhering to strict deadlines. AR 24. Dr. Lewis opined that Plaintiff had weight loss, weakness, bone pain, chronic headache as well as nausea and vomiting. AR 24. The ALJ gave this opinion some weight but not full weight because he did not believe that the evidence in the record supported it. AR 24. Specifically, the ALJ noted that Plaintiff had gained weight, and only endorsed having a headache twice and on one of these two occasions, Plaintiff attributed the headache to abstinence from alcohol. AR 24. The ALJ also noted that the record only showed that Plaintiff complained of nausea and vomiting on two occasions in late January 2011 and October 2011. AR 24.

The ALJ considered the assessment of the state agency consultant, Dr. Gilpeer, who found Plaintiff capable of performing light work with occasional postural abilities. AR 24. The ALJ gave this opinion some weight. AR 24. However, the ALJ stated that Plaintiff's daily activities did not support the need for any postural restrictions. AR 24. The ALJ found that in light of Plaintiff's ongoing fatigue, it was reasonable to limit the claimant to simple repetitive tasks. AR 24.

The ALJ considered the testimony of Plaintiff's mother, who provided a functional report stating that she spends one day per month with Plaintiff. AR 25. Plaintiff's mother stated that Plaintiff's medication makes him feel sick and his dizziness and fatigue have limited what he can do. AR 25. She claimed that Plaintiff appeared tired, weak and skinny. AR 25. She testified that

9

Plaintiff had difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, and climbing stairs. AR 25. The ALJ gave this opinion little weight because Plaintiff's mother only saw Plaintiff once per month and was not privy to his actual level of daily activities. AR 25. The ALJ also noted that Plaintiff's mother's functional report was dated in March 2011, only three months after Plaintiff's diagnosis, and that the record had shown that his symptoms improved. AR 25.

The ALJ found that while there was no doubt that Plaintiff was unable to sustain gainful employment for a period of time after the diagnosis of CML and during early acute treatment, this did not last for the twelve month durational requirement of the Social Security Act. AR 25. The ALJ noted that the record shows that he improved with chemotherapy and that his white blood cell count had been normal for quite some time. AR 25. The ALJ noted that Plaintiff's symptoms lessened and Plaintiff testified that he was able to pick up around the house, watch television, play with the cats, do the dishes, help with grocery shopping, read, listen to music, go to a park and socialize with friends, and go to bars occasionally. AR 25. The ALJ also noted that in April 2011, Plaintiff's CML was reported to be in remission. AR 25.

The ALJ stated that Plaintiff's doctor originally estimated that Plaintiff would be disabled for six months in January 2011, and that this was a reasonable estimate and was supported by the treatment record that shows he was continuing to do well and gaining weight in July 2011. AR 25. The ALJ found that this period of disability did not meet the twelve-month durational requirement, and as of July 2011, Plaintiff was capable of performing light work with modifications. AR 25.

3. <u>Step Four of the Sequential Evaluation</u>

Plaintiff had past relevant work as a file clerk, retail salesclerk, and counter attendant at a coffee shop. AR 25. The ALJ found that Plaintiff was unable to perform any past relevant work. AR 25. The physical and mental demands associated with Plaintiff's past relevant work exceeded his residual functional capacity. AR 25.

4. <u>Step Five of the Sequential Evaluation</u>

Plaintiff was twenty-nine years old as of the disability onset date. AR 25. He had a high school education and was able to communicate in English. AR 26. The ALJ found that considering

10

Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, and therefore, a finding of "not disabled" was appropriate. AR 26-27.

The ALJ based his finding on the testimony of the vocational expert, Scher, who testified that with the limitations posed in the hypothetical at the hearing by the ALJ, Plaintiff could perform light unskilled work as a cashier, ticket taker and photocopying machine operator. AR 26. The ALJ noted that Plaintiff's attorney posed additional facts to Scher as part of the hypothetical, and that Scher concluded that those additional facts would render the hypothetical person unemployable. AR 26. However, the ALJ found that the medical evidence did not support a finding that Plaintiff required unscheduled breaks for two hours during the workday or would miss one or two days of work per month. AR 26.

**Legal Standard**

        A.     <u>Standard of Review</u>

According to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to determining whether the findings of fact in the ALJ's decision are supported by substantial evidence or were premised on legal error. 42 U.S.C. § 405(g); see <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is relevant evidence that a reasonable person might accept as adequate in support of a conclusion; it is "more than a mere scintilla but less than a preponderance." <u>Id</u>.; see also <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir.1997).

To determine whether the ALJ's decision is supported by substantial evidence, courts review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision. <u>Sandgathe</u>, 108 F.3d at 980 (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.1995.) If the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). The trier of fact, not the reviewing court, must resolve conflicting evidence, and if the evidence can support either outcome, the reviewing court may not substitute its judgment for the judgment of the ALJ.

Id.; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). An ALJ's decision will not be reversed for harmless error. Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

### B. Definition and Determination of Disability

In order to qualify for disability insurance benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") utilizes a five-step sequential evaluation process in making a determination of disability. 20 C.F.R. § 404.1520; see Reddick, 157 F.3d 715, 721. If the SSA finds that the claimant is either disabled or not disabled at a step, then the SSA makes the determination and does not go on to the next step; if the determination cannot be made, then the SSA moves on to the next step. 20 C.F.R. § 404.1520.

First, the SSA looks to the claimant's work activity, if any; if the claimant is engaging in substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). Second, the SSA considers the severity of impairments: claimant must show that he has a severe medically determinable physical or mental impairment (or combination of severe impairments) which has which has lasted or is expected to last twelve months or end in death. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the SSA considers whether a claimant's impairments meet or equal a listing in 20 C.F.R. Part 404 Appendix 1. If so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the SSA considers the claimant's residual functional capacity ("RFC") and past relevant work; if the claimant can still engage in past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, the SSA considers whether, in light of the claimant's RFC and age, education, and work experience, the claimant is able to make an adjustment to another occupation in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). The claimant has the initial burden of proving disability. Reddick, 157 F.3d at 721. It is only if a claimant establishes an inability to perform his prior work at step four does the burden shift to the SSA to show that the claimant can perform other substantial work that exists in the national economy at step five. Id.

12

### C. Credibility

In determining whether a claimant's testimony regarding subjective pain or other symptoms is credible, the ALJ must engage in a two-step process. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has submitted objective medical evidence of the underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991). Next, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of his symptoms by offering specific, clear and convincing reasons for doing so. Id. at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not second-guess the ALJ's finding. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); see also Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.1999).

### D. Reversal or Remand

If a court finds that the ALJ erred or that his findings are not supported by substantial evidence, the court must decide whether to award benefits or remand the case for further proceedings. Evidence should be credited in favor of the claimant and an immediate award of benefits directed if the following three factors are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (citing Smolen, 80 F.2d at 1292). The decision of the district court whether to remand for further development of the administrative record or to direct an immediate award of benefits is a fact-bound determination subject only to review for abuse of discretion. Id. at 1777; see also Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981) (holding that a remand is necessary where the ALJ failed to make adequate findings but that a reversal is appropriate where the record thoroughly developed and a rehearing would simply delay receipt of benefits).

13

**Discussion**

Plaintiff seeks an order reversing the decision of the Commissioner of Social Security denying his Supplemental Security benefits and Social Security Disability Insurance Benefits. Alternatively, he asks that this case be remanded for a new administrative hearing. Plaintiff argues that: (1) the ALJ erred in not giving proper weight to the opinions of Plaintiff's treating physician Dr. Lewis and to the State Agency Consultant; and (2) the ALJ erred by failing to properly evaluate the side effects from Plaintiff's medications as related to his ability to work.

### A. Opinions of Treating Physician and State Agency Consultant

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff (treating physicians), (2) those who examined but did not treat the plaintiff (examining physicians), and (3) those who did not directly treat or examine the plaintiff (nonexamining physicians). See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id.

The opinions of treating physicians are generally afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. See 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(d)(2).

The ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir.2004); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir.2012) (ALJ may reject check-off reports that do not contain an explanation of basis for conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over

1  check-off reports). Because 20 C.F.R. § 416.927 contains guidelines for weighing opinions from
2  "acceptable medical sources" but none for weighing "other sources," an ALJ may accord opinions
3  from "other sources" less weight. Gomez v. Chater, 74 F.3d 967, 970–71 (9th Cir.1996). However,
4  where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for
5  "clear and convincing" reasons. See Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991). Even if
6  the treating doctor's opinion is contradicted by another doctor, the Commissioner may only reject the
7  treating doctor's opinion by articulating "specific and legitimate reasons" supported by substantial
8  evidence in the record. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983).

In determining disability, the ALJ "must develop the record and interpret the medical evidence." Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.2003). Nonetheless, it remains the plaintiff's burden to produce evidence in support of his disability claims. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir.2001). Moreover, the ALJ's duty to develop the record is triggered only when there is "ambiguous evidence or when the record is insufficient to allow for proper evaluation of the evidence." Id. at 459–60.

### i.    Dr. Lewis

Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Lewis' opinions. Plaintiff believes that even though the ALJ claimed to have afforded some weight to Dr. Lewis' April 2012 assessment, the ALJ failed to give it any weight. In particular, Plaintiff takes issue with the ALJ's statements that the April 2012 opinion was not supported by the record because headaches and nausea were noted only twice in the record and that Plaintiff gained some weight. Plaintiff believes that fatigue is the most troublesome symptom, and that the ALJ failed to consider the effect of fatigue on Plaintiff's ability to sustain full time work. Moreover, Plaintiff noted that Dr. Lewis opined that Plaintiff would need three to hour unscheduled half-hour breaks during a normal workday and would be absent from work one or two days per month. According to the vocational expert, such a person would be unemployable.

Defendant argues that the ALJ did not reject Dr. Lewis' opinion, but instead only gave it some weight because it was not supported by the record. Defendant noted that the ALJ found that after Plaintiff was diagnosed with CML in January 2011, he was in remission by April 2011. AR

15

501, 788. Defendant notes that the record shows that generally Plaintiff did well on treatment. He reported some disequilibrium while walking (AR 346-49), but one physician noted that the disequilibrium may have been due to Plaintiff's history of consuming alcohol. AR 354. Defendant argues that after Plaintiff's dose of Nilotinib was adjusted, his symptoms appeared to resolve, except for dizziness and difficulty balancing while walking. By April 2011, Plaintiff's doctor stated that he was overall improved and his CML was in remission. AR 501, 788. Defendant states that in October 2011, Plaintiff was described as slightly fatigued by Dr. Lewis and had an overall normal physical condition. AR 802. However, Dr. Lewis also stated in that report that Plaintiff was "still quite fatigued." AR 802.

Most significantly, the ALJ failed to adequately consider Dr. Lewis' April 2012 opinion that during the average workday, Plaintiff would need three to four unscheduled thirty minute breaks and would likely be absent from work once or twice per month due to symptoms and treatment. AR 748-50. These limitations caused the vocational expert at the hearing to testify that a hypothetical person with these limitations would be unemployable. AR 26. Further, these limitations are uncontroverted in the record. In his opinion, the ALJ simply stated, without citing to the record, that "the medical evidence does not support a finding that the claimant requires unscheduled breaks for two hours during the workday or would miss 1 or 2 days of work per month." AR 26. The ALJ concluded that Plaintiff's disability was resolved no later than July 2011 when a doctor's note stated that Plaintiff had "improved through the months" and was "doing well." AR 670. However, the ALJ did not provide clear and convincing reasons for not considering Dr. Lewis' opinions regarding breaks and absences from work, which were relevant to the vocational expert's opinion.

In addition, while Dr. Lewis stated that Plaintiff had weight loss, the ALJ focused on evidence in the record showing that Plaintiff gained weight after he started treatment. The citations to the record by the ALJ in support of Plaintiff's weight gain, however, are not specific and legitimate reasons because they were not contemporaneous. The evidence that the ALJ cited for Plaintiff's weight gain was from early to mid-2011, whereas Dr. Lewis' report listing weight loss as a symptom was dated April 2012. The ALJ also cited the report of the state agency consultant as evidence that Plaintiff gained weight, but that report does not include information about Plaintiff's

16

weight gain or loss. AR 365-70. Although there is evidence that Plaintiff gained weight after treatment, the ALJ did not state specific and legitimate reasons for affording only a little weight to Dr. Lewis' April 2012 opinion listing weight loss as a symptom, which was the most recent physician opinion at the time of the hearing and was months after the 2011 reports of weight gain.

The ALJ also erred in rejecting Dr. Lewis' April 2012 opinion to the extent that it stated that Plaintiff suffered from chronic headaches. AR 24. The ALJ noted that Plaintiff only represented that he had headaches on two occasions and one of those was attributed by Plaintiff as being caused by alcohol withdrawal. AR 24. The ALJ accurately described the record in that Plaintiff reported headaches in October 2011, and then in February 2012, which he attributed to alcohol withdrawal. AR 764, 765. 768, 775, 781. But again, the records that the ALJ relies on are not contemporaneous with Dr. Lewis' April 2012 report.

The ALJ also erred in rejecting Dr. Lewis' April 2012 opinion to the extent that it stated that Plaintiff suffered from nausea and vomiting. AR 24. The record shows that Plaintiff generally denied nausea and vomiting, except for occasions in January 2011 and October 2011. AR 349-50, 804. These records were not contemporaneous with the April 2012 report, so there are no records around or after April 2012 supporting the conclusion that Plaintiff did not suffer from nausea and vomiting.

On balance, the ALJ erred in filing to give more weight to Dr. Lewis' April 2012 opinion, especially Dr. Lewis' opinion that Plaintiff would need unscheduled breaks during the day and would be regularly absent from work.

### ii. Dr. Gilpeer

Plaintiff also argues that the ALJ erred in dismissing the opinion of Dr. Gilpeer, the state agency physical consultant, that Plaintiff's abilities related to postural activities were limited to an occasional basis only. AR 24; 368. The ALJ found that Plaintiff's daily activities did not support the need for any postural restrictions. AR 24. The ALJ found that Plaintiff could perform light work consisting of simple repetitive tasks. AR 24. However, the ALJ did not provide adequate reasons for rejecting the state agency consultant's finding that Plaintiff's abilities were limited to an occasional basis because his reason for rejecting postural limitations was Plaintiff's testimony of his

17

1  daily activities. AR 24. Those activities consisted primarily of lying down and watching television.
2  AR 62. He did some work around the house and took some walks in the evening, but his daily
3  activities did not support a finding that he could work a full time job even limited to simple
4  repetitive tasks, especially since Dr. Lewis found that Plaintiff would have to take numerous
5  unscheduled breaks and would be absent from work.

On balance, the ALJ erred in not giving full weight to Dr. Gilpeer's report that Plaintiff's abilities related to postural activities were limited to an occasional basis only.

### B. Side effects of medication

When assessing the credibility of the claimant, the ALJ must consider, among other things, "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." SSR 96-7p; see also 20 C.F.R. § 404.1529(c)(3)(iv) ("Factors relevant to your symptoms, such as pain, which we will consider include: . . . (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; . . . ."). Plaintiff argues that the ALJ erred by only superficially considering the side effects of Nilotinib, which Plaintiff takes to control his cancer. AR 22. The ALJ stated that the medication caused "some fatigue and body aches." AR 22.

Defendant argues that side effects of medication are only one factor to consider in the credibility analysis, and that the ALJ found Plaintiff not entirely credible. AR 23-25. Defendant notes that indefinite use of medication does not indicate disability. See Warre v. Commissioner, 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Warre, however, involved the issue of whether a claimant could afford medication that would control the impairment, which is not the issue here.

Defendant also notes that one of the reasons for considering the side effects in the credibility analysis is to determine whether the claimant does not take prescription medications because the side effects are less tolerable than the symptoms. SSR 96-7p. However, the record here does not indicate that Plaintiff failed to follow his doctor's advice to take his medications.

18

On balance, the ALJ erred in not fully considering the extent of the side effects of the Nilotinib as stated in Dr. Lewis' April 2012 evaluation. As described above, Dr. Lewis' evaluation indicates that the side effects of the treatment are more severe than "some" fatigue and body aches.

**Conclusion**

Accordingly, Plaintiff's motion for summary judgment is granted and Defendant's cross-motion for summary judgment is denied. This case is remanded for further proceedings.

Defendant argues that because alcoholism may be a factor in this case, payment of benefits may be improper on remand. See 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."). There is evidence that Plaintiff's treating doctors advised Plaintiff to stop consuming alcohol, that it may have contributed to some of his symptoms, and he did not follow their advice. However, the ALJ did not consider the effects of alcohol use. On remand, the ALJ may consider effects of Plaintiff's continued consumption of alcohol despite his doctors' recommendations to stop.

**IT IS SO ORDERED.**

Dated: February 19, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge